OPINION OF THE COURT
Titone, J.
 This appeal calls upon us to address two related questions: whether a person may be convicted of second degree manslaughter for engaging in reckless conduct which results in another person’s committing suicide and, if so, whether the conduct of the defendant in this case was a sufficiently direct cause of the victim’s death to support his conviction. For the reasons that follow, we conclude that both these questions should be answered in the affirmative.
I
According to the evidence adduced below, Jason Schuhle — a 17-year-old youth — met defendant on a street in the Village of McGraw, New York, during the early morning hours of August 6, 1988. Schuhle — who, at the time, was extremely distraught over having recently broken-up with his girlfriend— immediately imparted to defendant his desire to kill himself. At defendant’s invitation, Schuhle then accompanied him back to defendant’s apartment. There, for approximately the next half hour or so, Schuhle — who had been drinking heavily —continued to express suicidal thoughts and repeatedly importuned defendant to shoot him. In response to these entreaties, defendant provided Schuhle with some more alcohol and challenged him several times to jump headfirst off the porch of his second-story apartment. Finally, defendant — who later explained to the police that he was "tired” of hearing Schuhle complain about wanting to die — told Schuhle that he had a gun which he could use to kill himself. Defendant then retrieved a British .303 caliber Enfield rifle from his gun cabinet, and handed it to Schuhle, along with a number of bullets. He then urged Schuhle to "put the gun in his mouth and blow his head off.” Moments later, Schuhle loaded the rifle, pointed the barrel at himself and pulled the trigger. He later died as a result of the massive injuries he suffered.
Defendant was thereafter indicted for two counts of manslaughter in the second degree. The first count alleged that he had intentionally caused or aided Schuhle in committing *614 suicide (see, Penal Law § 125.15 [3]), and the second alleged that he had recklessly caused Schuhle’s death (see, Penal Law § 125.15 [1]). After a jury trial, defendant was acquitted of the first count but convicted of the second.
On appeal, however, the Appellate Division reversed and dismissed the indictment. The court — with one Justice concurring in result only — concluded that defendant’s conviction for reckless manslaughter (see, Penal Law § 125.15 [1]) could not be sustained because, in its view, Penal Law § 125.15, when read as a whole, clearly evinced a legislative intent "that a person be found guilty of manslaughter in the second degree for causing or aiding a suicide only when he or she acts intentionally” (171 AD2d 900, 901 [emphasis added]; see, Penal Law § 125.15 [3]). A Judge of this Court subsequently granted the People leave to appeal. We now reverse.
II
At the outset, we note that the conduct with which defendant was charged clearly fell within the scope of section 125.15 (l)’s proscription against recklessly causing the death of another person. As the People aptly observe, a person who, knowing that another is contemplating immediate suicide, deliberately prods that person to go forward and furnishes the means of bringing about death may certainly be said to have "consciously disregarded] a substantial and unjustifiable risk” that his actions would result in the death of that person (see, Penal Law § 15.05 [3]; § 125.15 [1]). Accordingly, unless the Appellate Division correctly concluded that, despite the apparent applicability of section 125.15 (1), it was nevertheless specifically contemplated by the Legislature that second degree manslaughter prosecutions involving suicide-related homicides would be maintainable solely pursuant to section 125.15 (3), defendant’s prosecution for reckless manslaughter cannot be said to have been improper.
As a general rule, a statutory prohibition against a particular type of conduct will not be deemed to constitute the exclusive vehicle for prosecuting that conduct unless the Legislature clearly intended such a result (see, People v Valenza, 60 NY2d 363, 371-372). Defendant argues that the Legislature evinced just such an intention here when it specifically proscribed only "intentionally caus[ing] or aid[ing] another person to commit suicide” in section 125.15 (3). We disagree.
*615 Nothing in the language or the legislative history of section 125.15 (3) suggests that the Legislature intended to foreclose second degree manslaughter prosecutions for recklessly causing a suicide. Rather, by all indications, section 125.15 (3) was simply meant to serve as a means of prosecuting those who, while having intentionally caused or aided another person to kill him- or herself, were not, in the Legislature’s judgment, as culpable as intentional murderers (compare, Penal Law § 125.15 [3] [providing that "intentionally caus(ing) or aid(ing) another person to commit suicide” constitutes second degree manslaughter], with Penal Law § 125.25 [1] [b] [providing that it is an affirmative defense to a prosecution for second degree murder that "(t)he defendant’s conduct consisted of causing or aiding, without the use of duress or deception, another person to commit suicide”]; see also, Staff Notes of Commn on Revision of Penal Law and Grim Code, Proposed NY Penal Law, McKinney’s Cons Laws of NY, Spec Pamph, at 339 [1964]; Denzer and McQuillan, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 125.15, at 226-227 [1967]).
Nor can we discern any reason why the Legislature would have wanted to limit criminal liability for causing a suicide to those instances where the accused acted intentionally. An individual who — like defendant — consciously disregards a substantial and unjustifiable risk that his actions will lead to another person’s killing him- or herself and thereby causes that person’s death may be just as culpable as one who intentionally causes or aids another to commit suicide (see, Staff Notes, op. cit., at 339 [noting that section 125.15 (3)’s proscription against intentionally causing or aiding a suicide applies even where the defendant is motivated by "sympathetic” concerns, such as the desire to relieve a terminally ill person from the agony of a painful disease]). In the absence of a clear indication to the contrary, we are simply unwilling to ascribe to the Legislature an intent to criminalize the latter conduct while at the same time subjecting the former to no penal sanction at all.
Ill
Having concluded that a person may be convicted of second degree manslaughter for having engaged in reckless conduct which results in another person’s committing suicide (see, Penal Law § 125.15 [1]), we now turn to the question whether *616 defendant’s conduct here was a "sufficiently direct cause” of Schuhle’s death to subject him to criminal liability (see generally, Brenner, Undue Influence in the Criminal Law: A Proposed Analysis of the Criminal Offense of "Causing Suicide”, 47 Albany L Rev 62 [1982]). Defendant, stressing the fact that it was Schuhle — not he — who loaded the rifle and pulled the trigger, urges us to answer this question in the negative. We find defendant’s argument to be unpersuasive.
Generally speaking, a person will not be held criminally accountable for engaging in conduct which results in another person’s death unless it can be demonstrated that his actions were "an actual contributory cause of death, in the sense that they 'forged a link in the chain of causes which actually brought about the death’ ” (Matter of Anthony M., 63 NY2d 270, 280, quoting People v Stewart, 40 NY2d 692, 697). The proof adduced below, when viewed in a light most favorable to the People (see, People v Bleakley, 69 NY2d 490, 495; People v Contes, 60 NY2d 620, 621), indicates that defendant gave Schuhle a rifle and a number of rounds of ammunition knowing full well that Schuhle had been drinking heavily and was in an extremely depressed and suicidal state, and that he then began taunting Schuhle to "put the gun in his mouth and blow his head off.” In light of this evidence, we must disagree with defendant that Schuhle’s act of loading the rifle and using it to kill himself constituted an intervening cause which —as a matter of law — relieved defendant of criminal responsibility. The jury could rationally have concluded that the risk of Schuhle’s taking these actions was something which defendant should have, under the circumstances, plainly foreseen (People v Galle, 77 NY2d 953, 955, quoting People v Kibbe, 35 NY2d 407, 412; see, Matter of Anthony M., supra, at 280-281; People v Warner-Lambert Co., 51 NY2d 295, 307; People v Stewart, supra, at 697; People v Cruciani, 36 NY2d 304, 305-306; Donnino, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law art 125, at 497-498 [1987]; cf., People v Pinckney, 38 AD2d 217, affd 32 NY2d 749). There is therefore no basis, on this Court’s review, to disturb the jury’s verdict.
Accordingly, the order of the Appellate Division should be reversed and the case remitted to that court for consideration of the facts (CPL 470.25 [2] [d]; 470.40 [2] [b]).
*617 Chief Judge Wachtler and Judges Kaye, Hancock, Jr., and Bellacosa concur; Judge Simons taking no part.
Order reversed and case remitted to the Appellate Division, Third Department, for further proceedings in accordance with the opinion herein.