[908 NE2d 878, 880 NYS2d 888]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
JONATHAN MATTOCKS, Appellant.

Argued March 26, 2009; decided April 30, 2009

**POINTS OF COUNSEL**

*Simpson Thacher & Bartlett LLP,* New York City (*Brian P. McCloskey* of counsel), and *Office of the Appellate Defender* (*Richard M. Greenberg* and *Sara Gurwitch* of counsel) for appellant. I. The trial court erred in denying Jonathan Mattocks's

motion for a trial order of dismissal because Mr. Mattocks did not possess a forged instrument as a matter of law. (*People v Cunningham,* 2 NY3d 593; *People v Grant,* 185 Misc 2d 512; *People v Lawrence,* 169 Misc 2d 752; *People v Pena,* 169 Misc 2d 366; *People v Hodges,* 246 AD2d 824; *People v Snyder,* 274 App Div 371, 298 NY 858; *People v Clark,* 190 Misc 725; *People v Teal,* 196 NY 372; *People v Sansanese,* 17 NY2d 302; *People v Abeel,* 182 NY 415.) II. The trial court erred in denying Jonathan Mattocks a suppression hearing where Mr. Mattocks had standing and set forth a sufficient factual basis in his motion. (*People v Mendoza,* 82 NY2d 415; *People v Hightower,* 85 NY2d 988; *People v Marquez,* 246 AD2d 330; *People v Vasquez,* 200 AD2d 344; *People v Huggins,* 162 AD2d 129.)

*Robert M. Morgenthau, District Attorney,* New York City (*Gina Mignola* and *Amyjane Rettew* of counsel), for respondent. I. A MetroCard that has been purposefully bent to alter the zero-value field is a forged instrument. (*Matter of D.U.,* 192 Misc 2d 601; *People v Abeel,* 45 Misc 86, 100 App Div 516, 182 NY 415; *People v Blase,* 57 App Div 585; *People v Gibbs,* 210 AD2d 4; *People v Roberts,* 208 AD2d 410; *People v Greenberg,* 89 NY2d 553; *People v Webb,* 5 AD3d 115; *People v Colon,* 306 AD2d 213; *People v L.R.,* 13 Misc 3d 1212[A], 2006 NY Slip Op 51800[U]; *People v Griffin,* 10 Misc 3d 1057[A], 2005 NY Slip Op 52006[U].) II. The Court correctly ruled that defendant had not made out any basis for a hearing on his motion to suppress physical evidence. (*People v Mendoza,* 82 NY2d 415; *People v Gruden,* 42 NY2d 214; *People v Burton,* 6 NY3d 584; *People v Murray,* 172 AD2d 437; *People v Lopez,* 5 NY3d 753; *People v Hightower,* 85 NY2d 988; *People v Landy,* 59 NY2d 369; *People v Moreno,* 223 AD2d 450; *People v Jones,* 95 NY2d 721; *People v Reynolds,* 71 NY2d 552.)

**OPINION OF THE COURT**

GRAFFEO, J.

In this case, we are asked whether the forgery provisions of Penal Law article 170 apply to Metropolitan Transportation Authority "MetroCards" that were purposefully bent in order to obtain free fares. We hold that this type of alteration can be prosecuted as a forgery.

I

The Metropolitan Transportation Authority (MTA) is responsible for operating the mass transit system in the New York

City area. In years past, a person gained access to the subways by purchasing a token and depositing it into a turnstile. This mechanical means of entry was eventually replaced with a computerized system that uses a "MetroCard"—a plastic swipe card that is "read" by a scanner, embedded within a turnstile, that deducts the cost of the fare from the MetroCard.

There are two types of MetroCards: value-based MetroCards (referred to as "pay-per-ride" cards) and time-based Metro-Cards (referred to as "unlimited" cards). A purchaser of a time-based card is provided unlimited transportation access for a specified period of time (one day, one week or one month depending on the purchase price). The purchaser of a value card electronically stores a certain amount of money on the Metro-Card that will be debited each time the user enters the MTA system. Only value cards are at issue in this appeal.

A MetroCard has two distinct magnetic fields that contain information, referred to as the primary and secondary fields. The MTA opted to use two fields so that the information encoded onto the card has "backup" storage in the event that a magnetic field is damaged. Based on the testimony of an MTA expert in this case, when a value-based MetroCard is swiped through the electronic eye of a turnstile, a computer reads both magnetic fields. If the MetroCard has monetary value remaining, the turnstile grants access and deducts the cost of the ride from the value of the card, amending the information stored on the magnetic strip to reflect the reduction in value. Thus, the expert explained, if a MetroCard is bought for $4 in value, that amount is initially encoded onto both the primary and secondary fields. When the card is first used for a $2 fare, the computer will deduct $2 from one of the fields, leaving the other field at $4. The next time the MetroCard is swiped for entry, the computer does not change the $2 field but instead reduces the $4 field to zero. Once one of the fields reads zero, the turnstile is not supposed to open. By utilizing this design methodology, which electronically leaves $2 of value on one of the magnetic fields even though the purchased value has been depleted to zero, the MTA intended to give riders "the benefit of the doubt" in the event that the magnetic strip was damaged. Thus, if the computer eye in the turnstile cannot determine the true remaining purchase value but can read the $2 backup field, one ride can be obtained.

Individuals seeking free rides on the subway soon learned how to take advantage of the system's design. By creating a

small bend or crease on the section of the magnetic strip where the zero-value field is contained, a person can obliterate that information so that, when swiped, the computer is unable to detect that the MetroCard is worthless, meaning no purchase value remains. When there is a strategically-placed crease or bend on the card, the turnstile computer will read the other field containing the $2 "backup" information, which gives the user of the card a free entry to the subway. Hence, a person can bend a valueless MetroCard and swipe it once, then use or sell the free ride at a discounted price by swiping it a second time (this is referred to as "selling swipes"). The ease of this type of alteration and its popularity among individuals who are willing to defraud the MTA contributed to considerable losses of revenue for the MTA—it was estimated that as of 2005, fraudulent MetroCard use was costing the MTA approximately $16 million per year, the equivalent of about eight million ride fares.

## II

One night in October 2005, an MTA employee working at the 125th Street station of the Lexington Avenue subway line reported that several individuals were selling MetroCard swipes. Two police officers responded and observed defendant bend MetroCards and swipe them through turnstiles, after which he solicited riders and gave them access to the subway using the bent MetroCards in exchange for money. When an officer approached defendant, he attempted to flee but was quickly apprehended with 14 MetroCards in his possession, all of which had the telltale crease; 11 of the cards had zero value and three of them had been successfully altered and would have each yielded a free ride. After he was in custody, defendant remarked to the police that "you better watch your back. I'm gonna serve 3 months. When I come out, you better just shoot me in the head, because I'm going to kill you." The reference to three months of incarceration appears to have stemmed from defendant's numerous prior convictions for MTA-related offenses and his apparent assumption that he would be facing charges under Penal Law § 165.16—a class B misdemeanor—for the unauthorized sale of certain transportation services.

Instead of pursuing misdemeanor charges, the People secured an indictment charging defendant with 14 counts of criminal possession of a forged instrument in the second degree, class D felony offenses. Defendant moved to suppress the MetroCards and cash that he had possessed at the time of the arrest, along

with his statement to the police. Supreme Court denied the motion. During the ensuing jury trial, defendant moved to dismiss the charges, arguing that the evidence was insufficient to prove that he committed possession of a forged instrument, and Supreme Court reserved decision.

At the close of proof, the court submitted only one count of second-degree possession of a forged instrument to the jury. The jury convicted defendant of that crime and Supreme Court subsequently denied defendant's motion to dismiss. Defendant was adjudicated a second felony offender and sentenced to 2 to 4 years of imprisonment. The Appellate Division affirmed (51 AD3d 301 [1st Dept 2008, Nardelli, J.]), a Judge of this Court granted leave (11 NY3d 738 [2008]) and we now agree with the well-reasoned opinion of the Appellate Division.

## III

Article 170 of the Penal Law defines the crime of forgery and related offenses. A person commits criminal possession of a forged instrument in the second degree "when, with knowledge that it is forged and with intent to defraud, deceive or injure another, he utters or possesses any forged instrument of a kind specified in section 170.10" (Penal Law § 170.25). Section 170.10 applies to a "written instrument" that a person "falsely makes, completes or alters" and "which is or purports to be, or which is calculated to become or to represent if completed . . . [p]art of an issue of tokens, public transportation transfers, certificates or other articles manufactured and designed for use as symbols of value usable in place of money for the purchase of . . . services" (Penal Law § 170.10 [4]). A "written instrument" under section 170.10 includes

> "any instrument or article, including computer data or a computer program, containing written or printed matter or the equivalent thereof, used for the purpose of reciting, embodying, conveying or recording information, or constituting a symbol or evidence of value, right, privilege or identification, which is capable of being used to the advantage or disadvantage of some person" (Penal Law § 170.00 [1]).

In this case, defendant concedes, and we agree, that a Metro-Card satisfies the statutory definition of a "written instrument."

Defendant maintains, however, that a bent MetroCard does not qualify as a "forged" instrument because it is not "falsely altered" (*see* Penal Law § 170.00 [7]). An instrument is falsely altered

"when, without the authority of anyone entitled to grant it, he changes a written instrument, whether it be in complete or incomplete form, by means of erasure, obliteration, deletion, insertion of new matter, transposition of matter, or in any other manner, so that such instrument in its thus altered form appears or purports to be in all respects an authentic creation of or fully authorized by its ostensible maker or drawer" (Penal Law § 170.00 [6]).

According to defendant, since the MTA does not sell Metro-Cards with creases, no person who examines a bent MetroCard would conclude that it was authentic, and it is therefore void on its face and not subject to the forgery statutes. Defendant also argues that a bent MetroCard is not a forged instrument because the damage does not create value on a worthless card, it merely prevents the turnstile computer from determining that the card has no value.

We reject these assertions. While it is true, as defendant submits, that the creasing of the MetroCards did not add monetary value where none existed, the damage to the Metro-Cards thwarted the usual computer processing of the information contained on the magnetic strips. By bending the Metro-Cards, defendant successfully destroyed the zero-value information encoded on one of the fields in the magnetic strips (*see* Penal Law § 170.00 [6]) and was able to acquire free rides on what were worthless MetroCards. Thus, defendant misused the "benefit of the doubt" system by intentionally making the valueless MetroCards purport to be authentic instruments. Nor did the small creases on the MetroCards make them appear to be inauthentic—in other words, not genuine MTA-issued Metro-Cards—to the human eye, they merely rendered the cards slightly bent. Notwithstanding this minimal physical blemish on the cards, they "appear[ed] or purport[ed] to be in all respects an authentic creation of or fully authorized by" the MTA as $2 MetroCards (Penal Law § 170.00 [6]) and were not void on their face. We therefore hold that the MetroCards defendant possessed were forged instruments under article 170 of the Penal Law.

■ Defendant additionally claims that the Legislature, in enacting Penal Law § 165.16 (a class B misdemeanor) to deal

specifically with illegal MetroCard activity, determined that this type of conduct was not to be prosecuted under article 170. The statute was adopted in 2005 to address MetroCard abuses and applies to the sale of certain transportation services provided by the MTA through the use of an "unlimited farecard or doctored farecard" (Penal Law § 165.16 [1]), which can include a bent MetroCard similar to the ones defendant possessed (*see* Penal Law § 165.16 [3] [c]). The executive memorandum described the statute's purpose:

> "Under current law, these illegal MetroCard swipers can often only be charged with a non-criminal violation, the penalty for which has proved unsuccessful in deterring this type of illegal activity. Also, since current violations do not appear on the perpetrators' records, there is no easy way to keep track of repeat offenders. This bill would help correct this situation by subjecting the swipers to misdemeanor criminal penalties of up to one year in jail" (2005-2006 Executive Budget, Transportation Article VII Legislation Mem in Support, NY Assembly Bill A1924-A, at 10-11).[1]

Although this statement indicates that a relevant provision addressing this type of conduct appears in 21 NYCRR 1050.4 (a noncriminal violation for the unlawful receipt of fare for providing access to Transit Authority facilities), there was no legislative direction to eliminate the applicability of forgery statutes. The primary governmental concern was that a violation as the penalty was ineffective as a deterrent and hampered the detection of repeat offenders.

Furthermore, we have recognized that the existence of "a statutory prohibition against a particular type of conduct"— such as Penal Law § 165.16—"will not be deemed to constitute the exclusive vehicle for prosecuting that conduct unless the Legislature clearly intended such a result" (*People v Duffy*, 79 NY2d 611, 614 [1992]; *see People v Walsh*, 67 NY2d 747, 749 [1986]; *People v Bergerson*, 17 NY2d 398, 401 [1966]). This intent cannot be imputed to the Legislature solely by virtue of the enactment of section 165.16 because the Legislature is presumed to be aware of existing law when it creates a new crime (*see e.g. People v Robinson*, 95 NY2d 179, 184 [2000]).

---

1. The executive proposal called for the creation of a class A misdemeanor offense. The Legislature amended that request by making the new crime punishable as a class B misdemeanor.

Prior to the codification of section 165.16, it had been acknowledged that the forgery statutes had been intentionally written in a broad fashion to encompass a wide range of conduct (*see People v Gottlieb*, 36 NY2d 629, 632 [1975]; *People v Abeel*, 182 NY 415, 421 [1905]). Notably, the use of "slugs" in place of tokens at subway turnstiles had been upheld as a forgery (*see e.g. People v Gibbs*, 210 AD2d 4 [1st Dept 1994]; *People v Roberts*, 208 AD2d 410 [1st Dept 1994]). As the modern-day equivalent of "slugs," the illegal use of altered MetroCards remains eligible for prosecution as a forgery despite the enactment of Penal Law § 165.16.

This type of conduct is subject to varying degrees of prosecution, including the noncriminal violation under 21 NYCRR 1050.4 (c) and the A misdemeanor pursuant to Penal Law § 170.20 (criminal possession of a forged instrument in the third degree), in addition to the class D felony and class B misdemeanor offenses. Thus, prosecutors have considerable discretion in choosing among these classifications, having due regard for the accused's prior history of defrauding or attempting to defraud the MTA, and other relevant considerations.[2] We trust that felony forgery prosecutions involving bent or altered MetroCards will be reserved for individuals, like defendant, who have been repeatedly prosecuted and convicted for abusing the MetroCard system.

Consequently, we conclude that defendant is not entitled to vacatur of his conviction of criminal possession of a forged instrument in the second degree.

## IV

Defendant alternatively argues that his motion to suppress the MetroCards, cash and his statement should not have been denied without a hearing. Although Supreme Court incorrectly believed that defendant lacked standing to pursue suppression (*see People v Burton*, 6 NY3d 584, 588-589 [2006]), the motion was properly denied without a hearing. A police officer averred that he had observed defendant swipe three people into the subway in exchange for money from the riders. Although

---

2. Similar charging discretion is available in connection with turnstile jumping, which can be prosecuted under various statutes, such as failure to pay a fare (21 NYCRR 1050.4 [a] [a noncriminal violation]), criminal trespass (Penal Law § 140.05 [a violation]), criminal trespass in the third degree (Penal Law § 140.10 [a B misdemeanor]) or theft of services (Penal Law § 165.15 [3] [an A misdemeanor]).

defendant maintained that he was merely "speaking with various neighborhood acquaintances," he never challenged the assertion that he had been selling swipes. Hence, the police officer's unchallenged statement was sufficient to provide probable cause for the arrest and there was no factual dispute on a material issue that needed to be resolved before a decision could be rendered on the suppression motion.

Accordingly, the order of the Appellate Division should be affirmed.

Chief Judge LIPPMAN and Judges CIPARICK, READ, SMITH, PIGOTT and JONES concur.

Order affirmed.