[949 NE2d 964, 926 NYS2d 16]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v PETER RIVERA, Respondent.

Argued March 22, 2011; decided May 3, 2011

## POINTS OF COUNSEL

*Janet DiFiore, District Attorney,* White Plains (*Hae Jin Liu, Lois Cullen Valerio* and *Richard Longworth Hecht* of counsel), for appellant. A conditional license reverts back to a revoked or suspended license when driven outside of its conditions. Accordingly, the People may charge aggravated unlicensed operation of a motor vehicle when a defendant drives drunk outside the terms of the conditional license. (*People v Eboli,* 34 NY2d 281; *People v Tousley,* 86 Misc 2d 1059; *People v Greco,* 151 Misc 2d 859; *People v Buckley,* 13 Misc 3d 910; *People v Sabin,* 139 Misc 2d 641; *People v Mattocks,* 12 NY3d 326; *People v Duffy,* 79 NY2d 611; *People v Urbaez,* 10 NY3d 773; *Pringle v Wolfe,* 88 NY2d 426.)

*Janet A. Gandolfo,* Sleepy Hollow, for respondent. I. The only charge available to the People pursuant to the facts herein is a violation of Vehicle and Traffic Law § 1196 (7) (f). (*People v Tousley,* 86 Misc 2d 1059; *People v Greco,* 151 Misc 2d 859.) II. Evidence presented to the grand jury was insufficient to show that defendant was driving out of conditions of conditional license. III. The People's argument—that it is within their discretionary authority to choose whether to prosecute under section 1196 of the Vehicle and Traffic Law or section 511 of the Vehicle and Traffic Law—is misplaced. (*People v Mattocks,* 12 NY3d 326; *People v Eboli,* 34 NY2d 281.)

## OPINION OF THE COURT

SMITH, J.

We hold that a driver whose license has been revoked, but who has received a conditional license and failed to comply with its conditions, may be prosecuted only for the traffic infraction

of driving for a use not authorized by his license, not for the crime of driving while his license is revoked.

I

On November 14, 2007, defendant was convicted of driving while intoxicated. The conviction carried with it the revocation of his license for a minimum of six months (Vehicle and Traffic Law § 1192 [2]; § 1193 [2] [b] [2]). However, as a first-time offender, defendant was eligible to participate in a rehabilitation program offered by the Department of Motor Vehicles (*see* Vehicle and Traffic Law § 1196) and, as a participant in the program, to receive a conditional license (Vehicle and Traffic Law § 1196 [7] [a]). Defendant entered the program and received a conditional license, which permitted him to drive to and from his place of work; as required by his job; to and from the rehabilitation program and related activities; to and from a school; and between noon and 3:00 P.M. on Saturdays.

On February 10, 2008, while his conditional license was in effect, defendant was arrested for driving while intoxicated at 1:04 A.M. He was with a woman he identified as his girlfriend, and told the arresting officer he was coming from "the bars." He was indicted for several offenses, but the only count of the indictment that now concerns us charged him with aggravated unlicensed operation of a motor vehicle in the first degree (Vehicle and Traffic Law § 511 [3]). On defendant's motion, Supreme Court dismissed this count before trial, and the Appellate Division affirmed (71 AD3d 700 [2010]). A Judge of this Court granted the People leave to appeal (15 NY3d 756 [2010]), and we now affirm.

II

At issue is the relationship between two offenses defined in separate sections of the Vehicle and Traffic Law. Defendant's alleged conduct clearly violated Vehicle and Traffic Law § 1196 (7) (f), which says: "It shall be a traffic infraction for the holder of a conditional license . . . to operate a motor vehicle upon a public highway for any use other than those authorized." A violation of section 1196 (7) (f) is punishable by a fine of up to $500, not more than 15 days of imprisonment and revocation of the conditional license.

The People argue, however, that defendant also violated Vehicle and Traffic Law § 511, which prohibits "aggravated unlicensed operation of a motor vehicle." That crime is committed when a person "operates a motor vehicle upon a public

highway while knowing or having reason to know that such person's license or privilege of operating such motor vehicle . . . is . . . revoked" (Vehicle and Traffic Law § 511 [1] [a]). Simply driving with a revoked license constitutes third degree aggravated unlicensed operation, a misdemeanor punishable by a fine, a jail term of up to 30 days, or both (*id.*). Doing so when the license was revoked for driving while intoxicated is second degree aggravated unlicensed operation, a more serious misdemeanor that can bring a jail term of up to 180 days (Vehicle and Traffic Law § 511 [2] [a] [ii]; [b]). And committing the second degree crime while under the influence of alcohol constitutes the first degree crime, with which defendant was charged; it is a class E felony punishable by up to four years of imprisonment (Vehicle and Traffic Law § 511 [3] [a] [i]; [b]; Penal Law § 70.00 [2] [e]).

Defendant points out that, at the time in question, he had a valid, unrevoked driver's license, though a conditional one. Thus he cannot, he says, be prosecuted for driving while his license was revoked. The People argue in substance that defendant should be viewed as having two licenses: the conditional one, good only at certain times and for certain purposes; and the revoked license, in existence at all other times. When defendant was arrested, on the People's theory, only his revoked license existed.

Defendant's reading of the statutory language is the more natural and straightforward one. It also finds strong support in the legislative history of Vehicle and Traffic Law § 1196 (7) (f).

Until section 1196 (7) (f) was enacted in 1989, the only Vehicle and Traffic Law provision that addressed violations of conditions stated in a driver's license was section 509 (3): "Whenever a permit or license is required to operate a motor vehicle, no person shall operate any motor vehicle in violation of any restriction contained on, or applicable to, the permit or license." Before 1989, a violation of section 509 (3) was a traffic infraction for which the fine could not exceed $50, and for which imprisonment for a first offense could not exceed 15 days (*see* former Vehicle and Traffic Law § 1800). In two pre-1989 cases, trial level courts considered whether someone in the position of defendant here—someone whose license had been revoked, who had received a conditional license as part of a rehabilitation program, and who had then violated the conditions on the license—should be prosecuted under Vehicle and Traffic Law

§ 509 (3) or Vehicle and Traffic Law § 511. The court in *People v Tousley* (86 Misc 2d 1059 [Yates County Ct 1976]) held that section 509 (3) was applicable and section 511 was not. The court in *People v Sabin* (139 Misc 2d 641 [Westchester County Ct 1988]) disagreed, concluding that the driver could be prosecuted under section 511.

In March 1989, a bill was introduced in the Senate at the request of the State Police that would have rejected *Tousley* and enacted the *Sabin* court's view of the law. As introduced, it would have amended Vehicle and Traffic Law § 511 (a) to add:

> "The suspension or revocation of the license or operating privilege of a person convicted of a violation of section eleven hundred ninety-two of this chapter, and who has been issued a conditional license or privilege pursuant to subdivision seven of section eleven hundred ninety-six of this chapter, shall continue to be effective any time such person operates a motor vehicle in violation of the terms of such conditional license or privilege." (1989 NY Senate Bill S3103 § 1 [a].)

This proposal—which states the position the People advance in this case—was not adopted. It was replaced during the legislative process by a bill that left section 511 unchanged in substance and instead created a new paragraph (f) of section 1196 (7). That paragraph, quoted above, created a new and more serious traffic infraction to deal with cases like this one—an infraction resulting in a larger fine than a violation of section 509 (3), and revocation of the conditional license. A letter from the Assembly sponsor of this measure to the Governor's Counsel described the existing law that the bill would change as being in accord with the *Tousley*, not the *Sabin*, case—in other words, with defendant's position here, not the People's: "a person who operates outside the terms of a conditional license granted after conviction for an alcohol-related offense is subject *only* to the standard traffic infraction involving a fine of up to $100 and/or 15 days in jail." (Letter of Michael J. Bragman to Evan A. Davis, July 7, 1989, Bill Jacket, L 1989, ch 420, at 7 [emphasis added].) The letter went on to explain that the bill the Legislature enacted

> "addresses the disparity by making the penalty for operating outside the terms of a conditional license subject to a fine of not less [than] $200 nor more

than $500 and/or a term of imprisonment of up to 15 days. The measure also calls for the revocation of the conditional license" (*id.*).

In sum, the Legislature decided not to amend section 511 to make what this defendant did a crime, but instead to make it a more serious traffic infraction; and the Assembly sponsor said plainly that he thought such offenders could be prosecuted only for traffic infractions. Comments from the Department of Motor Vehicles (Bill Jacket, L 1989, ch 420, at 10-11), the Division of Criminal Justice Services (*id.* at 14-15) and the Division of Alcoholism and Alcohol Abuse (*id.* at 19) expressed a similar opinion, though the Division of Parole thought otherwise (*id.* at 20).

Thus the legislative history as a whole powerfully reinforces what is in any event the most plausible reading of the statutory language: Vehicle and Traffic Law § 511 does not reach cases like this one. Every court to have considered the question since Vehicle and Traffic Law § 1196 (7) (f) was enacted—the courts in *People v Greco* (151 Misc 2d 859 [App Term 1992]) and *People v Buckley* (13 Misc 3d 910 [Sullivan County Ct 2006]), and the lower courts in this case—has reached that conclusion, and so do we.

The People argue that this reading of the statute disserves our State's strong public policy to combat drunken driving with serious penalties. They suggest that a maximum punishment of a $500 fine and 15 days in jail, coupled with revocation of the conditional license, is simply not an adequate sanction for someone who, having been given a limited right to drive after violating the law, has violated it again by ignoring the limitations. Admittedly, there is a large disparity between the punishments available under Vehicle and Traffic Law § 1196 (7) (f) for a driver who fails to meet the conditions on a conditional license and those available under Vehicle and Traffic Law § 511 for one who has only a revoked or suspended license. But that is exactly the problem that the Legislature addressed when it enacted section 1196 (7) (f). If its way of dealing with the problem was not adequate, it should be asked to take up the issue again.

Accordingly, the order of the Appellate Division should be affirmed.

GRAFFEO, J. (dissenting). When conduct falls under two or more penal provisions, this Court has consistently held that it is within the realm of a District Attorney's exercise of prosecutorial discretion to determine what offense to charge. Because the

conduct at issue in this case—defendant's operation of a motor vehicle at a time when he was not privileged to do so and while under the influence of alcohol—could be prosecuted either as a violation of Vehicle and Traffic Law § 1196 (7) (f) or Vehicle and Traffic Law § 511 (3) (a) (i), the People's decision to charge the latter offense should not have been disturbed. Since, under the majority analysis, a driver like defendant who not only disregards the limitations in the conditional license but also drives drunk will receive the same penalty as a person who engages in a minor violation of the terms of a conditional license, I respectfully dissent.

In November 2007, when defendant was convicted of misdemeanor driving while intoxicated (DWI), his driver's license was revoked for six months by the Department of Motor Vehicles (DMV). The day after the license revocation order was effective, the Department granted defendant a conditional license permitting him to drive to and from a drinking driver rehabilitation program, his employment, his classes at a local broadcasting school and during a three-hour period on Saturday afternoons. In February 2008, at 1:04 A.M., defendant was stopped by police after he drove through a red light. His slurred speech, the odor of alcohol and his performance on field sobriety tests led police to conclude he was intoxicated. Defendant admitted to police that he and his girlfriend, a passenger in the car, were coming from "the bars" nearby. After refusing to take a chemical test, defendant was charged with a variety of offenses, including aggravated unlicensed operation of a motor vehicle (AUO) in the first degree under Vehicle and Traffic Law § 511 (3) (a) (i), a class E felony. Pursuant to this provision, the People alleged that defendant's conduct met the following three elements: (1) defendant drove under the influence of alcohol; (2) at a time when his license was suspended, revoked or withdrawn by DMV; and (3) the suspension/revocation was based on a prior DWI conviction.

Before trial, defendant moved to dismiss the AUO count, arguing that a person who drives outside the terms of a conditional license can be charged only with a traffic infraction under Vehicle and Traffic Law § 1196 (7) (f). In opposition, the People argued that although defendant's violation of the conditional license could give rise to a traffic violation, that did not prevent them from instead charging him with AUO. Supreme Court dismissed the AUO count on the rationale that, by creating a statute that permitted defendant to be charged with a traffic

infraction for violating the terms of his conditional license (*see* Vehicle and Traffic Law § 1196 [7] [f]), the Legislature created an exclusive penalty for such conduct. The Appellate Division affirmed on a different basis, reasoning that "[u]pon the issuance of the conditional license, the defendant's status as a person with a revoked license was superceded by his status as a person with a conditional license," which negated the second element of AUO (*People v Rivera*, 71 AD3d 700, 701 [2d Dept 2010]). A majority of this Court also now affirms the dismissal of the AUO count of the indictment.

In my view, the majority and the courts below err in precluding the People from prosecuting defendant for first-degree AUO. The threshold question—the issue the Appellate Division found to be dispositive—is whether a defendant with a conditional license continues to hold the status of a person with a revoked or suspended license, thereby satisfying the second element of the AUO offense. Defendant maintains that, once he was issued a conditional license, he no longer could be characterized as having a revoked license. The People counter that the license revocation order remained in effect after the conditional license was issued and, when driving outside the limited, permissible conditions specified in the conditional license, defendant was operating his vehicle while his license was revoked.

This issue has been addressed in three other cases: two courts have concluded that a person who possesses a conditional license does not have the status of a person with a revoked or suspended license (*see People v Buckley*, 13 Misc 3d 910 [Sullivan County Ct 2006]; *People v Tousley*, 86 Misc 2d 1059 [Yates County Ct 1976]), and one determined that a person who drives in violation of the parameters of a conditional license is operating with a revoked or suspended license (*see People v Sabin*, 139 Misc 2d 641 [Westchester County Ct 1988]).[1] Our Court has not previously been presented with this question.

Resolution of this issue requires an understanding of the history and purpose of the conditional license program. Since 1975, New York has offered an alcohol and drug rehabilitation program to individuals convicted of DWI and related offenses

---

1. Another court has addressed the related—but distinct—issue of whether a person who is operating outside the limitations in a restricted use license is operating with a revoked or suspended license and has concluded that the restricted use license superceded the revocation or suspension (*see People v Greco*, 151 Misc 2d 859 [App Term 1992]).

(*see* L 1975, ch 291). Upon conviction of an alcohol-related driving offense, an offender's driver's license is typically suspended or revoked. As an incentive to participation in the rehabilitation program, those offenders who enroll are eligible to apply for a conditional license. Vehicle and Traffic Law § 1196 (7) (a) authorizes the Commissioner of DMV to grant a program participant a conditional driver's license "valid only for use[ ] by the holder thereof" while driving to or from a variety of specified destinations, including program activities and the person's school or employment. Under the statute, the license may also permit the participant to drive during a "three hour consecutive daytime period" on a day when he or she is not engaged at work or school.[2] Of critical relevance to this case, subdivision (7) (a) further provides: "Such license or privilege shall remain in effect during the term of the suspension or revocation of the participant's license or privilege unless earlier revoked by the commissioner."

This language indicates that the conditional license does not supercede the suspension or revocation order but instead is co-terminous with that order since the conditional license "remain[s] in effect *during the term of the suspension or revocation*" (emphasis added). Put another way, the suspension or revocation does not end when a conditional license is issued, otherwise there would be no "term of the suspension or revocation" for the conditional license to track.

Vehicle and Traffic Law § 1196 (5) also provides:

"upon successful completion of the [alcohol and drug rehabilitation program], a participant may apply to the commissioner . . . for the termination of the suspension or revocation order issued as a result of the participant's conviction which caused the participation in such course. In the exercise of discretion . . . the commissioner is authorized to terminate such order or orders and return the

---

**2.** The DMV, in its discretion, encourages voluntary participation in the drinking driver rehabilitation program by permitting the conditional license holder to drive not only to and from the rehabilitation program but also to and from work, school and a limited number of other venues, thereby accommodating the participant's basic transportation needs. But, that being said, the DMV may authorize operation of a motor vehicle only for the personal purposes listed in the statute. Consistent with the ongoing suspension or revocation order, a program participant cannot obtain a commercial license and may not use the conditional license for commercial purposes, such as to operate a taxicab (*see* Vehicle and Traffic Law § 1196 [7] [g]).

participant's license or reinstate the privilege of operating a motor vehicle in this state."

This clause is further evidence that the suspension or revocation continues in effect while a participant attends the drinking driver program, even if a conditional license has been issued, since, at the successful conclusion of the program, the participant must apply to the Commissioner "for termination of the suspension or revocation" when requesting restoration of full license privileges—restoration is not automatic. Rather, in order to obtain reinstatement of full license status, the participant must seek termination of the revocation or suspension—which, again, demonstrates that the revocation or suspension remains in effect, even after a conditional license has been issued.

Based on this statutory language, I disagree with the majority's conclusion that defendant's status as a person with a revoked license was "superceded" when the DMV issued him a conditional license. To the contrary, when the DMV revokes or suspends a person's license for a six-month period but then provides a conditional license to a program participant, it has not vitiated the original revocation or suspension order. The conditional license merely grants its holder a limited privilege to drive for particular purposes as specified in the license. When the DMV revoked defendant's license, it took away all his driving privileges. When it issued the conditional license the next day, it allowed a narrow range of permissible driving activities, but all remaining privileges continued to be revoked. Thus, when defendant drove outside the bounds of the limited privilege, he could not rely on the conditional license but instead had the status of a person with a revoked license. More particularly, his privilege to drive himself and a passenger home from a bar at 1:00 A.M. had not been restored; it remained revoked pursuant to the revocation order.

Several of the courts that have reached the contrary conclusion have relied on Vehicle and Traffic Law § 509 (5), which states that "[n]o person shall hold more than one unexpired license issued by the commissioner at any one time," reasoning that if a conditional license has been issued, this is the only license defendant holds, nullifying the prior revocation or suspension. For example, in *Buckley* (13 Misc 3d at 913), the court determined that in order to find that a person retained the status of a person with a revoked or suspended license after a conditional license had issued, it would have to conclude "that a person may hold two licenses at the same time, a conditional

license and a revoked license." The majority similarly adopts this reasoning, suggesting that the People are essentially arguing that defendant has two licenses: a conditional license and a revoked license.

I believe this misapprehends the People's argument. Consistent with Vehicle and Traffic Law § 509 (5), the only license a person with a conditional license holds is the conditional license—the prior full license has been revoked. The revocation or suspension of the full license is, in fact, a condition precedent to issuance of a conditional license—and the latter is valid during the term of the revocation or suspension order. While a conditional license restores a handful of driving privileges, permitting its holder to operate a vehicle only during the limited periods and for the narrow purposes detailed in the license, most have been withdrawn. This is precisely why—when he drove outside the conditions in the conditional license during the term of the revocation order—defendant may accurately be characterized as a person who operated a motor vehicle while his "license or privilege of operating such motor vehicle in this state . . . [was] suspended, revoked or otherwise withdrawn by the commissioner" (Vehicle and Traffic Law § 511 [1] [a]). Defendant could not rely on the conditional license to privilege his conduct at that time and it therefore fell within the category of driving privileges still covered exclusively by the revocation order. Thus, the People have alleged facts that, if proved, fulfill the second element of the first-degree AUO statute.

Since defendant's conduct fell within the purview of the AUO statute, the next issue is whether the People were precluded from charging defendant with AUO because there is another penal provision that also covered his conduct—the traffic infraction defined in Vehicle and Traffic Law § 1196 (7) (f). When a defendant engages in behavior that falls within more than one penal provision, it is generally left to the People to decide which statute to charge—and this rule holds true even if one offense is of a higher level of seriousness than the other. "[T]he existence of a statutory prohibition against a particular type of conduct . . . will not be deemed to constitute the exclusive vehicle for prosecuting that conduct unless the Legislature clearly intended such a result" (*People v Mattocks*, 12 NY3d 326, 333 [2009] [internal quotation marks and citations omitted]). "[O]verlapping in criminal statutes, and the opportunity for prosecutorial choice they represent, is no bar to prosecution. Unless there is evidence of legislative intent to the contrary, . . . the existence

of a specific statute prohibiting the conduct involved[ ] does not prevent prosecution under a more general statute" (*People v Eboli*, 34 NY2d 281, 287 [1974] [citations omitted]; *see People v Duffy*, 79 NY2d 611 [1992]).

For example, in *Mattocks*, we held that a defendant who defrauded the Metropolitan Transportation Authority by strategically creasing subway fare cards to facilitate their improper use for a free ride could be prosecuted for the class D offense of second-degree forgery, a provision generally criminalizing the possession or use of a false or altered written instrument. We reached this conclusion even though there were several other provisions covering the same conduct, including a class B misdemeanor offense that the Legislature had enacted in 2005 specifically addressing the use of a "doctored farecard" (*see* Penal Law § 165.16 [1]). We rejected the notion that, by creating a specific crime covering the fraudulent use of altered fare cards, the Legislature had evinced an intent to make that offense the exclusive vehicle of prosecution, noting the absence of a "legislative direction to eliminate the applicability of forgery statutes" (12 NY3d at 333). Although the criminal conduct at issue there was "subject to varying degrees of prosecution," ranging from a noncriminal violation defined in a regulation to the class D felony forgery charge for which defendant had been indicted, the Court recognized that "prosecutors have considerable discretion in choosing among these classifications," depending on the circumstances presented in the particular case, including defendant's criminal history (*id.* at 334).

The same analysis should govern in this case. Vehicle and Traffic Law § 1196 (7) (f) specifically penalizes driving outside the conditions in a conditional license, making such conduct punishable as a traffic infraction. But nothing in the statutory language evinces a legislative intent for this to be the exclusive means of prosecuting that conduct, particularly in a situation like the one presented here. In this case, defendant, who obtained his conditional license by virtue of his participation in a drunk driver rehabilitation program, not only drove outside the terms of the conditional license but was also operating a motor vehicle while in an intoxicated condition—the precise illegal conduct that led to his prior conviction and enrollment in the rehabilitation program. I do not believe that the Legislature had this scenario in mind when it created the traffic infraction.

Nor is an intent to treat this type of conduct exclusively as a traffic infraction clear from the legislative history of section

1196 (7) (f). When conditional licenses were first permitted in 1975, the conditional licensing statute did not contain a penalty for driving outside the terms of the license and there was some controversy as to how to prosecute a person who operated a vehicle during unprivileged periods or for unprivileged purposes. The majority suggests that, at that time, the only Vehicle and Traffic Law statute that covered this conduct was section 509 (3), which dealt with driving in violation of a restriction on a permit or license (*see* majority op at 657). But this observation assumes the answer to the question that this Court is charged with deciding in this case—which is whether a person who violated the terms of a conditional license could be charged with AUO, an offense that predated the conditional licensing scheme.

In 1976, in *People v Tousley* (86 Misc 2d 1059 [1976]), county court considered whether a person who had violated a conditional license should be charged with the section 509 (3) traffic infraction or misdemeanor AUO. There, defendant had been charged with the traffic infraction and, analogizing a conditional license to a restricted use license, the court concluded that this was appropriate. It went on to indicate in dicta that a defendant who drove outside the terms of a conditional license could not be charged with AUO. Twelve years later, a different county court reached the opposite conclusion in *People v Sabin* (139 Misc 2d 641 [1988]), a case with facts similar to this case. There, a defendant was charged with first-degree AUO when she was caught driving outside the terms of her conditional license while in an intoxicated condition. Noting the significant differences between a conditional license and a restricted license, and citing the language in the conditional licensing statute that I have highlighted earlier, the *Sabin* court concluded that a person who drives outside the conditions of a conditional license during the term of a license revocation order is driving with a revoked license and may be prosecuted for AUO.

This was the state of the law when, in 1989, the Legislature added a new subdivision (7) (f) to Vehicle and Traffic Law § 1196, creating a specific provision covering violations of conditional licenses. The Legislature categorized the new offense as a traffic infraction but imposed a penalty more severe than the penalty for a violation of section 509, the provision the *Tousley* court had applied. In fact, at the time of the amendment, the penalty for violating section 1196 (7) (f) (a fine of $200 to $500 and/or up to 15 days in jail) was identical to the penalty a person convicted of third-degree AUO would receive.

Although aware of the controversy concerning the applicability of the AUO statute, the Legislature did not indicate in adopting section 1196 (7) (f) that a person who violated the terms of a conditional license could be prosecuted only under that provision. There is no exclusivity language in the statute.

The majority points out that a prior version of the legislation would have amended the AUO statute to specifically declare that a person driving outside the conditions of a conditional license could be prosecuted for AUO—but the Legislature instead amended the conditional licensing statute to create a separate traffic infraction covering that conduct. From this development the majority infers that the Legislature did not intend the AUO statute to reach cases like this one (*see* majority op at 659).

But such an inference is unwarranted. Certainly, had the Legislature adopted the earlier version of the legislation, it would have confirmed the applicability of the AUO statute—but its failure to do so is no substitute for a clear expression of contrary intent. This Court has previously declined to place this type of significance on omitted language found in prior versions of a bill not ultimately adopted by the Legislature (*see Tzolis v Wolff*, 10 NY3d 100 [2008] [although Legislature did not enact prior version of bill that would have expressly permitted derivative suits on behalf of LLCs, this did not evince legislative intent to preclude such suits]). The fact that the Legislature did not amend the AUO statute to explicitly clarify that driving outside the conditions of a conditional license could constitute AUO does not establish that the Legislature intended to categorically preclude such prosecutions. If the AUO statute already encompassed that conduct (as the *Sabin* court had concluded, correctly in my view), then the addition of a new provision elsewhere in the statutory scheme specifically directed at conditional license violations did nothing to alter that fact. To remove a category of conduct from the purview of the AUO statute, lawmakers would have had to either amend that statute or include language in the newly enacted section 1196 (7) (f) stating that the latter was the exclusive vehicle for prosecuting such behavior. The Legislature did neither.

To be sure, we can infer from the legislative history of section 1196 (7) (f) that the Legislature intended that conduct consisting of nothing more than driving outside the limitations of a conditional license should generally be treated as a traffic infraction. Certainly, prosecution for a traffic infraction would be

appropriate for an individual found operating a vehicle at 4:00 P.M. on a Saturday when the conditional license permitted operation only between the hours of noon and 3:00 P.M. No doubt the People would agree.

But nothing in the legislative history of section 1196 (7) (f) suggests that the Legislature determined that a person who engaged in that type of infraction should receive precisely the same penalty as an offender who not only drove outside the temporal conditions of his license but was also in an intoxicated state—much more egregious behavior. A conditional license is a significant privilege granted to participants in DWI rehabilitation programs. When an individual who already has a history of operating a motor vehicle while intoxicated and who is supposed to be learning responsible driving behaviors nonetheless decides to disregard the terms of a conditional license and endanger himself and others by once again driving drunk, it is reasonable for the District Attorney to conclude that the behavior invites a more serious response. Where such aggravating conduct is present, I see no evidence that the Legislature divested the People of the discretion to prosecute it as first-degree AUO, a class E felony, rather than as a traffic infraction.

Moreover, defendant's participation in the conditional license program—a privilege that he severely abused—should not entitle him to more lenient treatment than he would have received had he engaged in the same conduct without ever having received that benefit. Yet, under the majority's view of the statutory scheme, defendant has committed only a traffic infraction while a similarly situated driver who never received a conditional license has committed first-degree AUO. This is one "benefit" of the limited license the Legislature surely never expected to confer. Because I find the majority's holding to be inconsistent with the statutory scheme and the policies underlying conditional licensing, I would reinstate the first-degree AUO count.

Chief Judge LIPPMAN and Judges CIPARICK, READ and JONES concur with Judge SMITH; Judge GRAFFEO dissents in a separate opinion in which Judge PIGOTT concurs.

Order affirmed.