People v Nunez (2018 NY Slip Op 02685)





People v Nunez


2018 NY Slip Op 02685


Decided on April 19, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 19, 2018

109240

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
GILBERTO A. NUNEZ, Appellant.

Calendar Date: February 20, 2018

Before: Egan Jr., J.P., Lynch, Mulvey, Aarons and Pritzker, JJ.


Miedel & Mysliwiec LLP, New York City (Florian Miedel of counsel), for appellant.
David M. Hoovler, District Attorney, Goshen (Robert H. Middlemiss of counsel), for respondent.


Mulvey, J.

MEMORANDUM AND ORDER
Appeal from a judgment of the County Court of Ulster County (Williams, J.), rendered February 7, 2017, upon a verdict convicting defendant of the crime of criminal possession of a forged instrument in the second degree (two counts).
The charges in this case stem from a series of events beginning in late 2010, when defendant commenced an extramarital relationship with Linda Kolman. Soon thereafter, Kolman received a host of text messages from a person who identified herself as "Samantha" and claimed that she was having an affair with Kolman's husband. When Kolman informed defendant about the messages she had received, defendant stated that he was a "special agent" with the Central Intelligence Agency (hereinafter
CIA) and offered to have a "friend" at the CIA look into the matter. Approximately one week later, defendant provided Kolman with an envelope containing a letter, on what purported to be official CIA letterhead, which discussed the results of the agent's investigation. Kolman initially questioned the letter's credibility but, when defendant berated her for expressing those doubts and asked for the letter back, Kolman apologized and chose to keep it.
Nearly 11 months later, in November 2011, Kolman's husband was found dead in his parked car outside of an exercise facility in Ulster County. Toxicology reports subsequently revealed significant amounts of midazolam, a sedative used primarily in the medical and dental setting, in Kolman's husband's system. Defendant, a dentist, was thereafter identified as a suspect in the murder and search warrants were executed at his home and place of business. During the search of one of defendant's computers, several files were discovered depicting what [*2]purported to be a CIA identification card in defendant's name and related images. Around this same time, Kolman gave the CIA letter to her lawyer who, in turn, turned that document over to police.
As a result of the extensive investigation that ensued, defendant was charged by indictment with murder in the second degree in connection with the death of Kolman's husband. The indictment also charged defendant with two counts of criminal possession of a forged instrument in the second degree related to the CIA letter that he had provided to Kolman and the CIA identification document recovered from his computer [FN1]. Following a jury trial, defendant was acquitted of the murder charge and convicted of the two counts of criminal possession of a forged instrument in the second degree, and he was sentenced to one year in jail.
Defendant's sole contention on this appeal is that his convictions are not supported by legally sufficient evidence and are against the weight of the evidence. "A person is guilty of criminal possession of a forged instrument in the second degree when, with knowledge that it is forged and with intent to defraud, deceive or injure another, he [or she] utters or possesses any forged instrument of a kind specified in [Penal Law § ] 170.10" (Penal Law § 170.25). Penal Law § 170.10, in turn, applies to a written instrument that a person "falsely makes, completes or alters" and "which is or purports to be, or which is calculated to become or to represent if completed[,] . . . [a] written instrument officially issued or created by a public office, public servant or governmental instrumentality" (Penal Law § 170.10 [3]). "A person 'falsely makes' a written instrument when he [or she] makes . . . [an] instrument, which purports to be an authentic creation of its ostensible maker
. . ., but which is not such . . . because . . . he [or she] did not authorize the making . . . thereof" (Penal Law § 170.00 [4]).
Here, defendant does not dispute that the letter and identification document found on his computer are written instruments and that each falsely purports to have been issued and/or created by the CIA. Instead, he argues that these documents cannot constitute "forged instrument[s]" under article 170 of the Penal Law because no reasonable person would perceive them to be authentic. We cannot agree. The identification document found on defendant's computer has the text "Central Intelligence Agency" across the top, bears the CIA seal and a bar code, contains defendant's photograph and sets forth other identifying information, such as defendant's name and purported title. The fraudulent letter, while poorly worded in certain respects, likewise contains indicia of authenticity; it appears on what purports to be official CIA letterhead and is ostensibly signed by a CIA agent. While the documents at issue here may well be subject to question or even deemed somewhat amateurish to the trained eye, the jury could nonetheless rationally conclude that they "purport[ed] to be an authentic creation" of the CIA (Penal Law § 170.00 [4]; see People v Mattocks, 12 NY3d 326, 332 [2009]; People v McFarlane, 63 AD3d 634, 635 [2009], lv denied 13 NY3d 837 [2009]; People v Prata, 47 Misc 2d 55, 56-57 [County Ct, Westchester County 1965]; compare People v Carratu, 26 AD3d 514, 515-516 [2006], lv denied 7 NY3d 753 [2006]).
We are similarly unpersuaded by defendant's contention that, with respect to the CIA identification document, the People failed to present legally sufficient evidence that he possessed such document with the intent to deceive. "Because intent is an invisible operation of the mind [and] direct evidence is rarely available" (People v Rodriguez, 17 NY3d 486, 489 [2011] [internal quotation marks, brackets and citation omitted]), the requisite "intent to defraud or deceive may be inferred from a defendant's actions and surrounding circumstances" (People v Kocsis, 137 AD3d 1476, 1478-1479 [2016] [internal quotation marks and citations omitted]; see People v Bracey, 41 NY2d 296, 301 [1977]; People v Hughes, 111 AD3d 1170, 1172 [2013], lv denied 23 NY3d 1038 [2014]; People v Bickley, 99 AD3d 1113, 1113-1114 [2012], lv denied 20 NY3d 1009 [2013]). Notably, the use or attempted use of the forged instrument is not an element of the crime, nor does Penal Law § 170.25 require that the contemplated use be imminent (see People v Rodriguez, 17 NY3d at 490; People v Dallas, 46 AD3d 489, 491-492 [2007], lv denied 10 NY3d 809 [2008]).
Here, the indictment charged defendant with criminal possession of the fraudulent CIA identification on February 7, 2012, the day his computer was seized, and it is undisputed that defendant was not making use of this document at the time of its recovery. Nevertheless, there are several facts that, when taken together, form a sufficient basis for the permissible inference that defendant possessed the forged CIA identification document with the intent to defraud or deceive. Defendant's hard drive was found to contain not only the forged CIA identification document itself, but also other files depicting portions of text and images depicted on the document — including his picture, the CIA barcode and different versions of the CIA seal. From this, the jury could have rationally determined that defendant retained the identification document at issue with the intent to create additional fraudulent identifications in the future. Moreover, during her testimony concerning the CIA letter, Kolman explained that defendant showed her a laminated CIA identification card similar to the one depicted on the files recovered from his computer and that defendant did so in an effort to convince her that he was a CIA agent. Evidence was also presented that defendant had offered a friend a sum of money to pose as the CIA agent who was purportedly investigating the source of the text messages that Kolman was receiving and that, to accomplish this task, defendant provided this individual with a fake CIA identification card and urged him to place his own picture on it. Defendant's use of the fraudulent CIA identification document on these prior occasions reinforces the inference of criminal intent (see generally People v Ingram, 71 NY2d 474, 479-480 [1988]; People v Vallevaleix, 39 AD3d 372, 373 [2007], lv denied 9 NY3d 852 [2007]). Finally, an inmate at the jail where defendant was confined prior to trial testified that defendant bragged about using the fake CIA identification document to "spic[e] up his sex life." While different inferences could be drawn from this statement, the jury could have evaluated it to be supportive of a finding that defendant possessed the identification document with the intent to use it to deceive those, like Kolman, with whom he seeks to have intimate relations. Viewed in the light most favorable to the People (see People v Denson, 26 NY3d 179, 188 [2015]), this evidence provided a legally sufficient basis for the jury to infer that defendant possessed the forged CIA identification document with the requisite intent (see People v Rodriguez, 17 NY3d at 489-491; People v Bickley, 99 AD3d at 1114; People v Dallas, 46 AD3d at 491-492). Upon independently evaluating the evidence in a neutral light and weighing the relative strength of the inferences that may be drawn therefrom, while giving due deference to the jury's credibility determinations (see People v Danielson, 9 NY3d 342, 348-349 [2007]; People v Bleakley, 69 NY2d 490, 495 [1987]), we further find that the verdict is supported by the weight of the evidence (see People v Hughes, 111 AD3d at 1172; People v Bickley, 99 AD3d at 1114).
Egan Jr., J.P., Lynch, Aarons and Pritzker, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: Defendant was also charged with various other crimes in two separate indictments and, following a jury trial on each, he was convicted as charged. His convictions in those matters are the subject of two separate appeals (People v Nunez, ___ AD3d ___ [appeal No. 109282] [decided herewith]; People v Nunez, ___ AD3d___ [appeal No. 109283] [decided herewith]).